**CEFCU**
P.O. Box 1715
Peoria, IL 61656-1715
(ASSIGNEE)

**RETAIL INSTALLMENT CONTRACT**
(Motor Vehicle)
SIMPLE INTEREST

CONTRACT NUMBER: 533531-600
ACCOUNT NUMBER: xxx-40-20
DATE: 09/30/2004

Buyer (and Co-Buyer) – Name and Residence Address:
SHOMARI A HOLLIS   VALERIE K FAULKNER
727 E KANSAS ST
PEORIA IL 61603  PEORIA

Security No.: 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  (309)682-7215

Seller and Creditor, Corporate, Firm, or Trade Name and Business Address:
SAM LEMAN CHRYSLER DODGE
161 DETROIT AVENUE
MORTON IL 61550

| NEW OR USED | YEAR AND MAKE | SERIES | BODY STYLE | NO. CYL | TRUCK TON CAPACITY | MANUFACTURER'S SERIAL NUMBER | IGNITION KEY NUMBER | COLOR | PROPOSED USE |
|---|---|---|---|---|---|---|---|---|---|
| USED | 2002 CHEVROLET | TRAILBLAZER | 4DR 4X4 | | | 1GNDT13S822242299 | BLACK | BLACK | XX Personal / Business / Agriculture |

Options: Automatic Trans, 4 Speed, Cruise Control, Power Steering, Power Brakes, Diesel, Power Seat, Power Windows, T-Top, Air Conditioner, Radio, Tape Deck, Stereo, Bucket Seats, Sunroof, Fuel Injection, ACC Group No.

**ALL DISCLOSURES ARE MADE BY SELLER**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS | TOTAL SALE PRICE |
|---|---|---|---|---|
| 10.60 % | $ 7268.68 | $ 24478.52 | $ 31747.20 | $ 32747.20 (downpayment 1000.00) |

**ITEMIZATION OF THE AMOUNT FINANCED**
- $ 21503.00 Cash Price
- $ 1000.00 Less cash down payment
- $ N/A Less trade-in
- $ 20503.00 Unpaid balance of cash price
- $ N/A Prior balance this Seller
- $ 53.52 Documentary fee

**AMOUNTS PAID TO OTHERS ON YOUR BEHALF**
- Pay-off of prior loan $ N/A  To ____
- $ 1423.00 License, title and taxes
- $ N/A to ____
- $ 2000.00 to CHRYSLER
- $ 499.00 to GAP INS
- $ N/A to ____
- $ 24478.52 Amount Financed

**Your payment schedule will be:**

| NO. OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 60 | $ 529.12 | MONTLY BEGINNING 11/14/2004 |
| | N/A | |

**CREDIT INSURANCE:** Credit Life and Credit Disability Insurance is voluntary and not required in order to obtain this loan and will not be provided unless you sign and agree to pay the additional cost. Please read the complete Credit Insurance Application and Certificate on the "Debtor Copy" prior to signing this authorization.

| TYPE | PREMIUM | COVERED MEMBER(S) |
|---|---|---|
| CREDIT LIFE  Single / Joint* | $ N/A | I/We want Credit Life Insurance — Signature ____ / Signature ____ |
| CREDIT DISABILITY  Single / Joint* | $ N/A | I/We want Credit Disability Insurance — Signature ____ / Signature ____ |

*NOTE: Two signatures are required if Joint Coverage is selected.

**DESCRIPTION OF TRADE-IN**
(Year and Make) ____
(Serial Number) ____
$ N/A (Gross Allowance)
$ N/A (Amount Owing)

You may obtain property insurance from any insurer you choose that is acceptable to CEFCU.

**Security:** You are giving a security interest in the goods or property being purchased and in your shares and/or deposits in CEFCU; collateral securing other loans with CEFCU may also secure this loan.

**Late Charge:** If any payment is ten (10) days late, you may be charged $10.00 or 5% of the payment, whichever is less.

**Prepayment:** If you pay off early, you will not have to pay a penalty.

See your contract terms on face and reverse side for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties.

**For details of possible refund for Credit Life or Credit Disability, see notice on reverse side.**

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED.

**NOTICE OF PROPOSED GROUP CREDIT LIFE INSURANCE**
If a charge is made in the ITEMIZATION OF AMOUNT FINANCED for credit life insurance and if such insurance is to be procured by Seller or Assignee, the undersigned takes notice that decreasing term insurance written under a Group Credit Life Insurance Policy is to be purchased on the life of the Buyer(s) whose signature(s) appear above, subject to acceptance by the insurer and issuance of a certificate by
CUNA MUTUAL INSURANCE SOCIETY, P.O. Box 391, 5910 Mineral Point Road, Madison, WI 53701-0391
_____
(Insurer)
_____
(Home Office Address)

**FOR DETAILS SEE NOTICE OF PROPOSED GROUP CREDIT LIFE INSURANCE ON REVERSE SIDE OF BUYER'S COPY**

**Payment Schedule:** Buyer hereby agrees to pay to Seller the Amount Financed shown above together with a Finance Charge on the principal balance of the Amount Financed from time to time unpaid at the rate of 10.60 % per annum from date until maturity in 59 installments of $ 529.12 each and a final installment of $ 529.12, beginning on NOV 14th, 2004 and continuing on the same day of each successive month thereafter until fully paid.

All payments shall be first applied to accrued interest to day of actual payment with the remainder applied to the unpaid balance of the principal. The amount of the final installment will be adjusted to reflect any accrued and unpaid interest resulting from early or late payment of any installments.

**Security Interest:** To secure the payment of the total of payments and all other amounts due or to become due under this contract, and any other loans you have with CEFCU now or in the future and any other amounts you owe CEFCU for any reason now or in the future, you hereby grant seller and assignee a security interest in the motor vehicle being purchased and in your shares and/or deposits in CEFCU.

**Rebate for Prepayment:** Buyer may prepay this contract in full at any time before maturity of the final installment.
If insurance premiums were prepaid, as shown above, Buyer will receive a refund from CEFCU on the basis of the "Rule of 78's".
If this contract evidences the sale of a used motor vehicle, (1) Buyer acknowledges receipt of the original or a true copy of the "Buyer's Guide" form displayed by Seller on the side window of the used motor vehicle; and (2) THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS A PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISION IN THE CONTRACT OF SALE.

**NOTICE TO THE BUYER:** 1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charges.

Buyer acknowledges receipt of a fully completed copy of this contract executed by both Seller and Buyer. Guarantor, if any, acknowledges receipt of completed copies of this contract and of the Explanation of Guarantors' Obligation.

Dated: SEP 30 2004

SAM LEMAN CHRYSLER DODGE (SELLER)
By: _____  TITLE ____

**RETAIL INSTALLMENT CONTRACT**
Buyer Signs: Shomari Hollis
(Co) Buyer Signs: Valerie Faulkner

Guarantor ____
I, hereby guarantee the collection of the above described amount upon failure of the seller named herein to collect said amount from the buyer named herein

## ADDITIONAL AGREEMENT OF BUYER

1. This contract contains all of the agreements of the parties relative to the retail installment sale, and no representations, promises, statements or warranties, express or implied, have been made by Seller unless contained herein. This contract may be assigned by the Seller.

2. Waiver of any default in the payment of any installment when due shall not operate as a waiver of any subsequent default. No extension of the time of payment or any other modification of the terms of this contract shall be binding on holder unless written consent thereto is given by an executive officer of holder. This contract shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns.

3. Buyer agrees to keep said motor vehicle fully insured against loss by fire, theft and collision for the entire term of this contract in companies acceptable to holder. Holder is authorized to purchase all insurance included in this contract. Insurance coverages, other than required insurance, have been voluntarily contracted by Buyer. Buyer may elect to purchase any required insurance from an insurance company agent or broker of his own choice but may not have a deductible amount in excess of $500.00. If Buyer so elects, he shall furnish Seller with a policy or binder issued by a company acceptable to Seller on or before taking possession of the motor vehicle, and inclusion of Buyer's premiums in this contract is optional with Seller. All policies procured by Buyer shall provide that loss, if any, shall be payable to Buyer and to the holder of this contract, as their respective interests may appear and a clause requiring insurer to give the holder 10 days written notice of cancellation. In the event of the failure of Buyer to insure said motor vehicle or to deliver a fully paid policy to holder at the times and in the manner herein provided, or in the event of cancellation or expiration of any policy during the term of this contract without replacement by Buyer within 10 days, such failure shall constitute an event of default hereunder. Holder shall have the option, but shall not be required to procure such insurance for Buyer and to advance the premium therefor. Buyer hereby promises to pay any such premium with finance charge thereon at the annual percentage rate stated on the reverse side hereof as an additional indebtedness due hereunder. Buyer hereby assigns to holder the proceeds of all insurance on said motor vehicle including unearned premium refunds. In the event of default by Buyer hereunder, holder is authorized to cancel such insurance, receive and receipt for unearned premiums and to endorse any check or draft therefor made payable to Buyer. Any unearned premium received by the holder shall be credited to the final maturing installments of this contract except to the extent applied toward payment for similar insurance protecting the interests of Buyer and the holder, or either of them.

4. Buyer shall not use or permit said motor vehicle to be used in violation of any law or ordinance, State, Federal or Municipal. Buyer shall not sell, lease, encumber or place said motor vehicle in any other person's possession or remove it from the State of Illinois without the written consent of the holder of this contract. Buyer shall not use said motor vehicle for hire or as a taxi. Buyer shall keep said motor vehicle free from all mechanic's liens, tax liens and all other liens.

5. Buyer agrees that (1) if Buyer shall in the event of default in the payment of any installment of the Total of Payments or any other indebtedness due hereon; or (2) Buyer shall fail to perform any agreement or warranty made by Buyer herein; or (3) if the motor vehicle shall be lost, stolen, substantially damaged, destroyed, sold, encumbered, removed, concealed, attached or levied upon, or (4) if the motor vehicle shall be seized or forfeited for violation of any law or ordinance, State, Federal or Municipal (whether or not disputed by Buyer); or (5) a proceeding under any bankruptcy or insolvency statute shall be instituted by or against Buyer or Buyer's business property, or Buyer shall make an assignment for benefit of creditors; or (6) if Buyer shall die or be adjudged incompetent; or (7) if holder shall, for reasonable cause, deem itself insecure; or (8) if Buyer shall fail to keep the motor vehicle fully insured for the entire term of this contract, the holder may declare all installments of the Total of Payments and all other indebtedness secured hereby immediately due and payable, without notice or demand.

6. Upon the occurrence of any event of default, the holder of this contract shall have the rights and remedies provided by Article 9 of the Illinois Uniform Commercial Code including, but not by way of limitation, the rights of the holder (a) to take immediate possession of the motor vehicle, with or without judicial process, and for such purpose to enter upon the premises whom it may be located; and (b) to give Buyer reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or other intended disposition thereof is to be made; and (c) to dispose of the motor vehicle at public or private sale in accordance with said notice to Buyer and to buy at a public sale; and (d) to apply the proceeds of sale first to the reasonable expenses of retaking, holding, preparing for sale and selling and to reasonable attorney fees and legal expenses incurred by holder, and second, to satisfaction of Buyer's indebtedness hereon, and third, to satisfaction of any subordinate security interest in the motor vehicle if demand therefor is received by holder before disposition of the proceeds, and to account to Buyer for any surplus remaining. Buyer shall be liable for any deficiency. If the Buyer has paid an amount equal to 30% or more of the deferred payment price at the time of repossession, the Buyer may, within 15 days, redeem the motor vehicle from the holder by tendering (a) the total of all unpaid amounts including any unpaid delinquency or deferral charges due at the time of the tender, without acceleration, and (b) performance necessary to cure any default other than nonpayment of the amounts due, and (c) any reasonable costs or fees incurred by the holder in retaking the motor vehicle. The tender must be made in cash, certified check or money order. By law, Buyer has the right to redeem the motor vehicle only once. It is expressly agreed by Buyer that the requirements of reasonable notice shall be met if notice is mailed to Buyer at the address of Buyer shown herein not less than 10 days prior to the sale or other disposition. All rights and remedies of the holder, whether provided for in this contract or conferred by law, are cumulative. Buyer agrees to pay all attorney fees and legal costs including, but not limited to, fees and costs incurred in post judgment collection efforts and bankruptcy proceedings.

7. Buyer agrees that holder, in retaking said motor vehicle as herein provided, may take possession of personal effects and property found therein and hold the same for delivery to Buyer.

8. The Buyers agree that they are each primarily and jointly and severally liable hereon and that the receipt of the consideration hereof by any one of the Buyers shall constitute the receipt thereof by all of the Buyers. The Buyers and the Guarantor agree that no release of one or more signatories of this contract or any security for this contract shall release any other signatory. The Buyers and the Guarantor consent to any and all renewals or extensions of this contract.

9. Forced-Placed Insurance. The Buyer agrees that should the Assignee, at any time during the life of this loan, reasonably believe that the insurance coverage required to be provided by the Buyer has been, or will be, terminated for any reason, the Assignee may obtain insurance protecting the Assignee's interest and may charge the full cost of such coverage to the balance hereunder. The Buyer agrees that the Assignee may purchase such insurance from an insurance agency/affiliate of the Assignee, and that such insurance will provide no coverage for bodily injury, property damage or liability insurance, and that it will not, necessarily, comply with the financial responsibility laws of any state. The cost of this insurance will be added to the outstanding balance hereunder resulting in increased finance charges, it may cause an increase in the monthly payment or without affecting the amount of the monthly payment, and will, therefore, result in a substantial "balloon" payment at the time that this contract matures.

10. If any provision of this contract is held invalid, the invalidity shall not affect the remaining provisions hereof.

11. You authorize and direct your employer to deduct from your paychecks the amounts necessary to satisfy the installments due on this loan or account, and to pay the amounts deducted to the credit union. You authorize the credit union to provide your employer with a copy of this Contract, and also with such additional information as may be needed to effectuate the payroll deduction. Your authorization of payroll deduction is strictly voluntary and may be terminated at any time that you choose.

12. Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

NOTICE: ANY HOLDER OF THE CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM.
(1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY.
(2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT CEFCU TO SEE IF A REFUND IS DUE.

"DOCUMENTARY FEE. A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 1992, WAS $40. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $40 WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW."

### ASSIGNMENT OF DEALER

FOR VALUE RECEIVED, Seller hereby sells, assigns and transfers to CEFCU, P.O. Box 1715, Peoria, Illinois 61656, all of Seller's right, title and interest in and to this Retail Installment Contract and its security interest in the motor vehicle described herein. To induce Assignee to purchase the contract, Seller represents and warrants that (1) the contract is valid, genuine and correctly states the terms of the transaction between Seller and Buyer; (2) the motor vehicle has been delivered to and accepted by the Buyer; (3) the down payment was paid in full, in cash or in trade, and that no part was loaned to Buyer by Seller; (4) Seller has good title to and the right to sell the motor vehicle to Buyer and that the motor vehicle is free of all liens, claims and encumbrances; (5) no notice of any defense or right of action has been received by Seller from Buyer nor has Seller any knowledge of any fact that would impair the validity of the contract; (6) Seller has the right to sell and assign this contract to Assignee; (7) all Buyers have legal capacity to contract; (8) on the date of the contract Seller delivered to each Buyer a completed copy of the contract; (9) Seller has complied with all requirements of the Federal Truth in Lending Act and Regulation Z, the Federal Equal Credit Opportunity Act and the Illinois Motor Vehicle Retail Installment Sales Act, and the regulations of all governmental agencies; (10) Seller assigned to Buyer the Manufacturer's Statement of Origin or the Certificate of Title, and took all necessary steps under the Illinois Commercial Code and other applicable statutes to ensure that the security interest in the merchandise purchased is perfected and enforceable; (11) the motor vehicle has not been used as a taxi, for commercial transportation or by law enforcement agencies; and (12) "The warranties herein are made to induce holder to purchase this contract, and if there is a breach of any, without regard to holder's knowledge or reliance thereon, or the Buyer and/or Co-Buyer raises any claim for rescission, cancellation, or any other defenses, set-off or counterclaims of any kind, the undersigned will on demand, purchase this contract from holder for the balance then remaining unpaid. The undersigned agrees to indemnify and hold holder harmless from and against any and all causes of actions, claims, demands, liabilities, losses, damages or expenses, including attorney fees, which holder may at any time sustain by reason or in consequence of holder having interest in this contract."

Assignee: CEFCU  
P.O. BOX 1715  
PEORIA, IL 61656

Seller: _____  
By _____  
Dated: _____ OCT 0 4 2004

# STATE OF ILLINOIS
## CERTIFICATE OF TITLE OF A VEHICLE

**533531**

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 1GNDT13S822242259 | 2002 | CHEVROLET | TRL BLAZR | UTILITY | X4294077015 |

| DATE ISSUED | ODOMETER | CCM | PURCHASED | PURCHASE DATE |
|---|---|---|---|---|
| 10/20/04 | 30650 / 60550 | | USED | 09/30/04 |

MOBILE HOME SQ. FT.

TYPE OF TITLE: **ORIGINAL**

MAILING ADDRESS:
CITIZENS EQUITY FEDERAL CR UN
PO BOX 1715
PEORIA IL 61656

LEGEND(S): ACTUAL MILEAGE

OWNER(S) NAME AND ADDRESS:
BHOMAR C ROLISI
ALBRET FAULKNER
[address illegible]
PEORIA IL 61605

FIRST LIENHOLDER NAME AND ADDRESS:
CITIZENS EQUITY FEDERAL CR UN
PO BOX 1715
PEORIA IL 61656

SECOND LIENHOLDER NAME AND ADDRESS:

**VOID VOID VOID VOID VOID VOID**

**RELEASE OF LIEN**
The holder of Lien on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

By _____ Signature of Authorized Agent _____ Date _____
By _____ Signature of Authorized Agent _____ Date _____

NOTE: ANY ASSIGNMENT... must be with an application for title and presented to the Secretary of State.

## ASSIGNMENT OF TITLE

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING-ODOMETER DISCREPANCY

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair market value unless this document is accompanied by a salvage application."

ODOMETER READING ___ TENTHS ___
Signature(s) of Seller(s) _____
Printed Name(s) of Seller(s) _____
"I am aware of the above odometer certification made by seller."
Signature(s) of Buyer(s) _____ Printed Name _____
DATE OF SALE _____

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS, AT SPRINGFIELD.

CONTROL NO. 05172237

*Jesse White*, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**