**SIGNED THIS: May 17, 2013**

_____
**William V. Altenberger
United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| VALERIE FAULKNER, | ) | Case No. 07-81412 |
| Debtor. | ) | |
| | ) | Chapter 13 |
| | ) | |
| VALERIE FAULKNER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 12-08069 |
| | ) | |
| CEFCU, | ) | |
| Defendant. | ) | |

**O P I N I O N**

This matter is before the Court on the Complaint of Valerie Faulkner (the "Debtor") alleging that CEFCU violated the discharge injunction by failing to release the title to a 2002 Chevrolet Trailblazer following the Debtor's completion of her Chapter 13 plan and entry of an order of discharge.  CEFCU responds that it is not required to release its lien and surrender title to the vehicle until the remaining deficiency balance is paid by the non-filing co-debtor.

The parties agree that there are no issues of fact and that only a question of law remains for this Court to decide. The Debtor filed her petition for relief under Chapter 13 on July 3, 2007. In her petition, the Debtor listed CEFCU as a secured creditor holding a lien on the 2002 Chevrolet Trailblazer, and listed Shomari Hollis as a co-debtor on the CEFCU debt. On August 10, 2007, CEFCU filed a proof of claim for $16,106.62, claiming $11,375 as secured and $4,731.62 as unsecured. CEFCU attached to its proof of claim copies of the retail installment contract executed on September 30, 2004 by the Debtor and Shomari Hollis as well as a copy of the certificate of title, identifying the registered owners of the 2002 Chevrolet Trailblazer as the Debtor and Shomari A. Hollis.

The Debtor's plan provided for CEFCU to be paid $11,375 plus 9% interest on its claim, with any remaining balance to be treated as unsecured.[1] The plan also provided that "[t]he secured creditors shall retain their liens upon their collateral until they have been paid the value of said property." Finally, the plan stated that the Debtor estimated that "unsecured creditors will receive zero percent (0%) of their allowed claims." CEFCU did not object to the Debtor's plan, and it was confirmed on September 10, 2007.

The Debtor made all payments under her plan and received an order of discharge on October 18, 2012. The Chapter 13 Trustee's Final Report, filed on December 11, 2012, shows that CEFCU received $11,375 plus $3,471.26 in interest on its secured claim and $158.20 on the unsecured portion of its claim.

The Debtor characterizes the issue as whether CEFCU can decline to release its lien on the 2002 Chevrolet Trailblazer where the confirmed plan specifically provides for bifurcation of the debt into a secured and unsecured component and specifies that secured creditors would retain their liens

---

[1] CEFCU's claim was not incurred within the 910-day period preceding the date of the filing of the Debtor's petition, and thus is not subject to the anti-cramdown provisions of the hanging paragraph of § 1325(a)(9). Accordingly, the Debtor's plan properly bifurcated CEFCU'S claim into its secured and unsecured components pursuant to § 506(a).

2

on collateral until they have been paid the value of the collateral. According to the Debtor, since CEFCU has been paid the value of the 2002 Chevrolet Trailblazer of $11,375, CEFCU is therefore obligated to release its title to the vehicle notwithstanding the fact that there is a non-filing co-debtor liable on the retail installment contract and also listed on the certificate of title. The Debtor concedes that there are cases indicating a creditor does not have to release a title to a vehicle if there is a co-signer on the contract. However, citing *In re Brooks,* 340 B.R. 648 (Bankr.D.Me. 2006), the Debtor asserts that this case "seems to indicate" that if the plan specifies that a portion of the debt is unsecured and clearly and conspicuously provides for release of the lien, the creditor must release the title at discharge.

CEFCU responds that although the Debtor paid $11,375 plus 9% interest as required by the plan and received her discharge, an unsecured balance of $7,302.66 remains on the loan and therefore CEFCU is not required to release its lien and surrender title to the 2002 Chevrolet Trailblazer until the deficiency balance is paid by the non-filing co-debtor. CEFCU acknowledges that it is not entitled to collect this deficiency balance from the Debtor post-discharge, but asserts there is nothing in § 524 that prevents CEFCU from asserting its rights against the non-filing co-debtor for the deficiency balance.

Section 524, relating to the effect of a discharge, provides in relevant part:

(a) A discharge in a case under this title–

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section . . . 1328 of this title . . . ; [and]

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . .

* * *

(e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

11 U.S.C. § 524(a). The purpose of § 524 is to "ensure that once a debt is discharged, the debtor will not be pressured in any way to repay it." *Matter of Stoneking*, 222 B.R. 650, 652 (Bankr.M.D.Fla. 1998) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 364 (1977), U.S. Code Cong. & Admin. News 1978, 5963, 6320).

When a debtor files a Chapter 13 case, the Bankruptcy Code imposes a stay protecting a non-filing co-debtor from collection efforts during the pendency of the debtor's case. Specifically, § 1301(a)(2) provides, in relevant part:

> (a) Except as [otherwise] provided . . . after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless–
>
> * * *
>
> (2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

11 U.S.C. § 1301(a)(2). The purpose of the co-debtor stay is to delay creditors from asserting their rights against co-signed debts while a Chapter 13 bankruptcy case is pending. *In re Leonard*, 307 B.R. 611, 614 (Bankr.E.D.Tenn. 2004). The co-debtor stay protects the principal debtor, and any protection of the co-debtor is incidental. *Id*. (citing *Southeastern Bank v. Brown*, 266 B.R. 900, 907 (S.D.Ga. 2001)).

In *In re Leonard*, the bankruptcy court addressed a situation similar to the one presented in the current adversary proceeding. In that case, the debtors filed a motion requesting the entry of an order by the court directing the creditor, GMAC, to release its lien on a vehicle and to turn over title to the debtors. *Id*. at 612. According to the debtors' bankruptcy petition, GMAC was listed as a secured creditor of the debtor wife and a non-filing co-debtor holding a claim secured by a 1994 Chevrolet Suburban. The debtors' plan provided for a cram-down of GMAC's claim, leaving GMAC with an allowed unsecured claim. The debtors made all payments under their plan and

received a discharge. The Chapter 13 trustee's final report showed that while GMAC was paid a small amount on the unsecured portion of its claim, a deficiency balance remained. *Id*. at 612-13.

The court noted that GMAC was paid the entire balance of its allowed secured claim, was paid a portion of its allowed unsecured claim, and once the debtor wife received her discharge, she was no longer liable to GMAC for any deficiency balance owing on the vehicle. *Id*. at 614. However, because the contract balance was not paid in full, GMAC still retained a lien on the vehicle as to the non-filing co-debtor, and the non-filing co-debtor was still liable for the deficiency balance and any accruing interest. *Id*. Although GMAC was enjoined by the discharge injunction from proceeding against the debtor wife, the court noted that it had every right to proceed against the non-filing co-debtor personally and against the vehicle in which the non-filing co-debtor had granted a security interest and that GMAC was not required to release its lien and turn over title to any party until it was paid in full. *Id.*

Likewise, in *In re Jackson*, 2012 WL 6623497 (Bankr.M.D.Ga. 2012), the bankruptcy court addressed the effect of a Chapter 13 plan's lien release provision on a vehicle partially owned by the debtor where the co-owner was also liable on the loan. In *Jackson*, the debtor's plan provided that "all holders of liens other than long term debt . . . shall cancel said liens within 15 days following notification of the debtor(s) discharge." *Id*. at *1. The creditor objected to the lien release provision in the plan, arguing that unless the debtor was proposing to pay the claim at the contract rate of interest, the creditor was entitled to recover from the co-signer the difference between the contract rate of interest and the rate of interest provided in the debtor's plan. The court ruled that because the lien release provision stated that the creditor would retain its lien until discharge, the provision met the requirements of § 1352(a)(5)(B)(I) and the plan could be confirmed over the creditor's objection.

5

Turning to the question of the effect of the lien release provision on property only partially owned by the debtor, the court concluded that the provision applied to render the lien unenforceable only as to the debtor's interest in the vehicle. Id. at *3. However, the lien would remain in place and could be enforced as to the co-signer's interest in the vehicle until such time as the creditor received full payment of its claim at the contract rate. *Id.*

In the present case, the Debtor asserts that as the plan both specifies that a portion of the creditor's debt will be unsecured and provides a clear and specific lien release provision, the creditor must release its lien and surrender title upon discharge of the Debtor, notwithstanding the existence of a non-filing co-debtor. The Debtor points to paragraph seven of her plan, which states, "[t]he secured creditors shall retain their liens upon their collateral until they have been paid the value of said property" as being the operative provision that requires CEFCU to release its lien and surrender title to the 2002 Chevrolet Trailblazer.[2] In making this argument, the Debtor cites *Brooks*, 340 B.R. at 653.

In *Brooks*, the bankruptcy court dealt with two issues: first, whether a debtor may reap the benefit of the lien-stripping provisions of § 506(a) and §1322(b)(2) before completing her Chapter 13 plan and obtaining her discharge by virtue of language in her confirmed plan, and second, whether the creditor's refusal to release its lien after the entry of an order allowing the debtor to sell the vehicle free and clear of liens constituted a violation of the automatic stay. With respect to the first issue of whether the creditor was required by the plan language to release its lien before the debtor completed her plan payments and received her discharge, the bankruptcy court acknowledged

---

[2] Section 1325(b)(5)(B)(i), which was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), now provides that a Chapter 13 plan must provide that the holder of a secured claim retains its lien until the earlier of (1) the payment of the underlying debt determined under nonbankruptcy law or (2) discharge under § 1328. *See* 11 U.S.C. 1325(b)(5)(B)(i). The provision in paragraph seven, stating that a secured creditor retains its lien until it has been paid the value of the property, would appear to be in contravention of this requirement as on its face it requires release of a lien when the allowed secured claim is paid in full, which could occur before the plan is completed and the discharge is issued. However, as this plan has been confirmed, this provision has now become binding on the Debtor and CEFCU. *See* 11 U.S.C. § 1327(a) (providing for binding effect of confirmation).

6

the split of authority as to the enforceability of such a requirement. *Brooks,* 340 B.R. at 651-52. The bankruptcy court then determined that it need not address the thorny issue because the plan provision that the debtor was relying on was not sufficiently clear and conspicuous to have put the creditor on notice that it would be required to release its lien before its contract claim was paid in full. *Id*. at 652. Specifically, the bankruptcy court noted that the provision the debtor was relying upon stated that "[u]pon payment in full of the allowed amount and any applicable interest, the creditor's security interest is deemed satisfied in full," and appeared at the end of a multi-sentence paragraph dealing generally with all secured claims. *Id*. at 653. The bankruptcy court stated, "[a] lien release requirement such as this one, if it could be valid at all, must be express, not left to implication. Because [the debtor's] plan's language fails to provide minimally sufficient notice to GMAC that its lien was targeted by an early release provision . . . I conclude that GMAC's lien is not subject to a pre-plan completion release requirement." *Id*.

Regarding the second issue, whether the creditor's refusal to release its lien after the entry of an order allowing the debtor to sell the vehicle free and clear of liens constituted a violation of the automatic stay, the bankruptcy court, citing *In re Leonard*, discussed above, concluded that, while the creditor may not collect from the non-filing co-debtor during the pendency of the debtor's Chapter 13 bankruptcy, so long as there remains the possibility of personal liability on behalf of a record owner of the vehicle, the creditor is within its rights in retaining its lien. *Id*. at 654. The bankruptcy court then observed that the debtor remained free to sell her interest in the vehicle to anyone willing to pay for it. *Id*.

Although the Debtor's argument is not entirely clear, it appears the Debtor is relying on that portion of the *Brooks* opinion that implies if a plan provision is sufficiently clear and conspicuous to put the creditor on notice of the provision, the provision is enforceable against the creditor. According to the Debtor, because the lien release provision in the Debtor's plan specified and was

7

clear in nature that CEFCU was to release its lien, CEFCU is bound by that provision irregardless of whether there is a non-filing co-debtor. According to the Debtor, it is "up to her discretion" whether or not the co-signer has any interest in the vehicle after CEFCU releases its lien.

While the Debtor is correct that CEFCU is bound by the confirmed Chapter 13 plan as to its lien on the Debtor's interest in the vehicle, the Debtor is incorrect in her implication that the plan modifies the rights of CEFCU as to its contract with the non-filing co-debtor, Shomari Hollis. Section 524(e) specifically provides that, with certain exceptions relating to community property claims that are not applicable here, the discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt. 11 U.S.C. § 524(e). Thus, as in the *Jackson* case, the lien release provision in the Debtor's plan, no matter how clear and conspicuous, can only serve to release CEFCU's lien as to the Debtor's interest in the vehicle.[3] *See Jackson*, 2012 WL 6623497 at *3. Any collection activity by CEFCU directed at the Debtor would clearly violate the discharge injunction because the Debtor, once receiving her discharge, is no longer personally liable to CEFCU for any remaining deficiency balance.[4] However, CEFCU'S lien remains in place and can be enforced against the non-filing co-debtor's interest in the vehicle until such time as CEFCU receives full payment of its claim at the contract rate. Accordingly, this Court concludes that CEFCU has not violated the discharge injunction by failing to release its lien and surrender the title to the 2002 Chevrolet Trailblazer. *See Leonard*, 307 B.R. at 614.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. See Order entered this day.

# # #

---

[3] This Court also observes that, even if the lien release language could theoretically affect CEFCU's rights against the co-signer, the language in the Debtor's plan suffers from the same infirmities as the lien release language at issue in *Brooks*: it does not name CEFCU specifically nor sufficiently put CEFCU on notice that it would be required to give up its rights against the co-signer. *See Brooks*, 340 B.R. at 652.

[4] No such improper collection activity by CEFCU has been alleged in this adversary proceeding. Indeed, in its brief, CEFCU acknowledges that the discharge injunction protects the Debtor and that she is no longer liable for any deficiency balance owed to CEFCU, and asserts that it did not violate § 524 because it has never attempted to collect the deficiency balance from the Debtor after the entry of her discharge.